UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
CHARESSE WHITE,                                        :
                                                       :      No.
                                  Plaintiff,          :
                                                       :
               -against-                               :      **COMPLAINT**
                                                       :
                                                       :      (Plaintiff Demands
                                                       :      A Jury Trial)
                                                       :
IRI: INNOVATIVE RESOURCES FOR                          :
INDEPENDENCE INC. and LINA SARAY                       :
Individually,                                          :
                                                       :
                                  Defendant's.        :
-------------------------------------------------------------------X

Plaintiff, Charesse White ("hereinafter "Plaintiff" or "Plaintiff White"), as and for her Complaint (the "Complaint") against Defendant IRI: Innovative Resources for Independence Inc. and Defendant Lina Saray, sets forth and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action, involves federal questions, because the causes of action asserted herein arise in part under the Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 200e et. Seq. ("Title VII"), as well as The Americans with Disabilities Act ("ADA") of 1990, amended in 2008.  This Court has jurisdiction over the related state law claims herein asserted pursuant to 28 U.S.C. §1367, *Gibb*, 38 U.S. 715 (1966), the human rights laws of the State of New York and the City of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against,

and retaliated against by Plaintiff's former employer on the basis of race, religion and disability in accordance with the applicable principles of pendant jurisdiction.

2. Plaintiff further complains pursuant to the laws of the State and City of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, and conductively and actually discharged by Plaintiff's former employer on the basis of race, religion and disability.

3. Venue properly lies in the Eastern District in which a substantial part of the events or omissions giving rise to the claim occurred, or substantial part of property that is subject of the action is situated in accordance with 28 U.S. Code §1391 (b)(2).

## JURY DEMAND

4. Plaintiff demands a trial by jury.

## PARTIES

5. Plaintiff is an African American woman who is a resident of the State of New York in the County of Queens.

6. At all times material, Defendant Innovative Resources for Independence (hereinafter referred to as "IRI" or "Defendant") is a domestic corporation, with their headquarters located at 112-40 Francis Lewis Blvd., Queens Village, NY, 11429.

7. At all times material, Defendant's Director of Human Resources Lina Saray (hereinafter referred to as "Defendant Saray") was and is a supervising employee with Defendant IRI. Upon information and belief, Defendant's Director of Human Resources ("HR") Lina Saray is of Hispanic descent.

8. At all times material Defendant Saray had direct supervisory authority over Plaintiff White with regard to her employment which included but was not limited to

2

the ability to hire and fire along with other tangible employment actions.

9.   At all times material, Defendant Saray discriminated  against the Plaintiff on the basis of her race, subjected the Plaintiff to retaliation and eventual unlawful termination.

## **PROCEDURAL HISTORY**

10. On or about February 24, 2023, Plaintiff filed with the Equal Employment Opportunity Commission.

11. In or around April of 2023, the EEOC office confirmed receipt of Plaintiff's Charge and assigned it the following EEOC Charge No. **520-2023-03879.**

12. On or about October 31, 2023, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the Defendant(s) under federal laws in federal court.

13. This lawsuit is being filed within receipt of the (90) day EEOC Right to Sue provision.

## **FACTS**

14. Defendant hired the Plaintiff on or about December 16, 2019, as a full-time employee in the position of Residential Manager.

15. Plaintiff was an exemplary employee and performed to her duties to the best of her abilities.

16. Defendant's Human Resources ("HR") Director, Saray, began harassing the Plaintiff when a digital piano - owned by one of the residents - went missing.

17. On or about July 7, 2021, an audit was conducted at the facility in which the Plaintiff worked.

3

18. The Plaintiff, while running an inventory for the sake of an audit, noticed that a digital piano had gone missing.

19. The digital piano was stored, along with other items, in plain view by the manager's office in the basement hallway and was accessible to anyone working or residing in the facility.

20. The items stored in the hallway were frequently moved around by the janitorial staff and/or the facility staff in order to clean, so the Plaintiff knew from experience that items stored at this site were often moved by the janitors or by the patrons of the facility on an as needed basis.

21. Although the digital piano was stored in a manner which made it impossible for the Plaintiff to safeguard it, Defendant Saray decided to reprimand the Plaintiff for the missing piano.

22. Plaintiff could not take responsibility and reminded Defendant Saray that it was her, the Plaintiff, who reported the missing piano in the first place.

23. Defendant Saray's baseless and biased accusations hurt the Plaintiff as she had been nothing but loyal to her employer and the residents.

24. In addition, the Plaintiff could not understand why she (an African American) was being held solely accountable, while her Supervisor, Residential Manager Steven Almonte (Hispanic) was not held accountable.

25. Although the Plaintiff shared her responsibilities with Supervisor Almonte, the Plaintiff was deemed the sole offender by Defendant Saray and was held fully responsible for the missing piano.

26. Upon information and belief, Defendant Saray and the Supervisor Almonte

are both Hispanic.

27. Upon information and belief, Supervisor Almonte was also responsible to safeguard the residents' belongings.

28. Defendant Saray discriminated against the Plaintiff on the basis of her race by treating her disparately compared to Supervisor Almonte.

29. The following week, Defendant Saray ordered the Plaintiff to report to her office and forced the Plaintiff to sign a document agreeing that it was in fact the Plaintiff's fault that the piano was lost/stolen.

30. Fearing that she would lose her job, the Plaintiff reluctantly and while under duress, signed the document in order to close the matter.

31. Furthermore, Defendants withheld 40 hours of Plaintiff's paid vacation time, a clear financial burden to the Plaintiff and a materially adverse punishment which far exceeded the value of the lost item.

32. When the Plaintiff prepared to sign as ordered, the Defendant Saray specifically instructed the Plaintiff to backdate the signature.

33. Fearing for her job, the Plaintiff backdated the signature as ordered while under duress.

34. However, the Plaintiff immediately regretted signing a backdated document as she did not know the full extent of the repercussions she would face as a result of signing the document.

35. That same day, the Plaintiff sent Defendant Saray an email expressing her concern about the untruthful date on the document.

36. Defendant Saray replied to the email and ordered the Plaintiff to return to her office.

37. Once there, Defendant Saray dramatically tore up the document in front of the Plaintiff and ordered her to sign a new one.

38. The Plaintiff felt extremely uncomfortable because Defendant Saray's temperament was so severe and hostile.

39.  The above actions were only the beginning of a discriminatory and retaliatory campaign launched by Defendant Saray.

40. From on or about November 8, 2021, through January 26, 2022,  the Plaintiff was on medical leave due to hip replacement surgery which affected Plaintiff's daily life activities.

41. While Plaintiff was recovering, Defendant IRI instituted a new policy allowing qualified employees to be exempt from Covid-19 vaccination.

42. The Plaintiff applied for the exemption and was approved due to her religious beliefs.

43. Upon the Plaintiff's return from medical leave, the Covid-19 testing policy for exempt employees required employees to get tested twice a week and hand in the tests results on Mondays and Fridays at 5:00 PM.

44. This protocol, set in place by the Defendants, coincided with the widespread Covid-19 Omicron variant.

45. Due to congested medical facilities offering Covid-19 testing, it was hard for the Plaintiff to find appropriate testing centers.

46. The Plaintiff had also recently undergone hip surgery and could not stand for prolonged periods of time, as most testing facilities had no room for patients to sit inside, forcing them to stand in long lines outside the facilities.

47. Nonetheless, Plaintiff was persistent, and despite the difficulties due to crowd congestion and her disability, she brought in her test results on time to the best of her abilities.

48. In or around the end of January or beginning of February 2022, Defendant Saray called the Plaintiff to reprimand her for producing her Covid test results late.

49. Apparently, Defendant Saray had sent out an email changing the dates of when the tests were supposed to be brought in.

50. The Plaintiff explained to Defendant Saray that she hadn't seen the email.

51. Additionally, the Plaintiff took this opportunity to explain to Defendant Saray that she found it difficult to find appropriate testing sites because of overcrowded and overbooked facilities on account of the Omicron variant.

52. Plaintiff also explained it was difficult to stand outside of facilities for long durations of time on account of her disability.

53. The Plaintiff further explained to Defendant Saray that she was doing everything to best of her ability in order to hand in each scheduled covid test promptly and on time.

54. Disregarding Plaintiff's protestations, in part on account of disability, Defendant Saray maintained her discriminatory animus against the Plaintiff and dismissed

Plaintiff's protected complaint and concerns.

55. Defendants left the Plaintiff helpless. The Plaintiff needed to report the baseless retaliation and hostility she was being subjected to at work, but the very person who received such complaints was the same person discriminating against the Plaintiff.

56. On or about February 23, 2022, the Plaintiff needed to participate in a mandatory management meeting, which conflicted with her scheduled time to hand in her Covid test.

57. The Plaintiff consulted with Supervisor Almonte on how to properly proceed.

58. Supervisor Almonte, instructed the Plaintiff to write an email to Defendant Saray explaining why she could not hand in the Covid test results on this specific occasion at the specified time.

59. The Plaintiff followed Supervisor Almonte's order and sent an email to Defendant Saray, informing her that she could not hand in the test on time because of the mandatory meeting but would hand it in the very next day.

60. On or about February 25, 2022, two days after the Plaintiff sent the email, the Plaintiff received a call from Defendant Saray whereby Saray harassed and belittled the Plaintiff for missing the deadline.

61. Notably, Plaintiff also suffers from Lupus and when Defendant Saray called Plaintiff to berate and harass her, it caused the Plaintiff to incur extreme flare ups. Additionally, the Plaintiff's stress levels sky-rocketed, and her heart started racing, causing the Plaintiff to suffer extreme anxiety.

62. The Plaintiff explained to Defendant Saray that the Plaintiff did exactly as she was instructed by Supervisor Almonte, thus she did not bear responsibility for the decision.

63. Plaintiff informed Defendant Saray that Defendant IRI did not have a protocol for such instances (when a mandatory meeting is scheduled at the same time as the submission of the covid test results); nor were the staff instructed officially or unofficially by Defendant Saray on how to take and hand in their test in case of unforeseen circumstances.

64. In absence of such instructions, the Plaintiff had asked Supervisor Almonte for guidance and acted on his orders.

65. Lastly, the Plaintiff informed Defendant Saray, that in case she wanted the Covid test results ahead of the scheduled date and/or there were overlapping appointments, the Plaintiff would comply and do everything in her power to get the results to the Defendants.

66. Defendant Saray was furious that the Plaintiff had indicated that there were deficiencies in Defendants' Covid testing policies, leading Defendant Saray to discriminate even more towards the Plaintiff.

67. Furthermore, upon information and belief, there were other Hispanic employees who would also bring their tests late, yet none of them were reprimanded and disciplined by Defendant Saray, further evidencing the disparate treatment the Plaintiff was being subjected to at work.

68. Upon information and belief, Plaintiff was also the only employee with an exemption who also suffered from a diagnosed, regarded as, and perceived

disability.

69. Despite pointing out her disability and the difficulties associated with her disability, Defendant Saray did not hold any interactive discussion with the Plaintiff to accommodate her. Instead, Defendant Saray chose to berate, belittle, and harass the Plaintiff to the point that Plaintiff suffered extreme bouts of stress which induced physical manifestations of anxiety.

70. On or about February 28, 2022, just three days after the Plaintiff pointed out discrepancies in the covid test policies while mentioning her religious exemption and disability, Defendant Saray emailed the Plaintiff, informing Plaintiff that her Covid-19 exemption was being revoked and that the Plaintiff was being suspended without pay for 30 days.

71. To add injury to insult, Defendant Saray personally called the Plaintiff in a rude and dismissive manner to inform her of the suspension and revocation, despite the religious exemption.

72. In temporal proximity to Plaintiff's complaints, Defendant Saray retaliated against the Plaintiff by suspending the Plaintiff without pay for 30 days and removing her Covid vaccine exemption.

73. Upon being informed of her suspension, Plaintiff called the Defendants IRI's Chief Operating Officer ("COO"), Dr. Elizabeth Corrigan.

74. The Plaintiff complained to Dr. Corrigan about the ongoing retaliation and discrimination she was being subjected to by Defendant Saray.

75. Rather than address the issue with Defendant Saray or take any preventative measures to protect the Plaintiff, Dr. Corrigan instructed the Plaintiff not to focus

10

on who is right or wrong but rather, to reassure Defendant Saray that the Plaintiff would hand in her Covid test results on time.

76. Once again, Defendants left the Plaintiff feeling helpless. Dr. Corrigan was unwilling to help the Plaintiff and demanded that the Plaintiff accept the abuse and retaliation in order to keep her job.

77. Considering that this job was Plaintiffs' sole mean of income, the Plaintiff, complied with Dr. Corrigan's orders and wrote an apologetic email to Defendant Saray where she asked to be reinstated.

78. On or about March 1, 2022, the Plaintiff received an email from Defendant Saray stating in sum and substance that she would consider the Plaintiff's request.

79. On or about March 3, 2022, Defendant Saray sent the Plaintiff another email, stating that she was approving Plaintiff's return to work on two conditions: First, Plaintiff was required to get tested for Covid-19 as per the employee schedule. Second, Plaintiff's test needed to be submitted by 5:00 PM on the scheduled dates.

80. However, Defendant Saray introduced an ultimatum, warning the Plaintiff that if she failed to present the tests by 5:00 PM on the dot, the Plaintiff was to be immediately terminated.

81. On or about March 7, 2022, the Plaintiff replied to Defendant Saray's email, expressing concerns about the rigidity of the draconian ultimatum.

82. On or about March 9, 2022, Defendant Saray called the Plaintiff to her office, where she demanded that the Plaintiff acknowledge and agree to the

conditions sent to the Plaintiff by email on March 3, 2022.

83. The Plaintiff asked for clarification on the rigid deadlines, as this would mean that Defendant Saray could and would fire the Plaintiff in case her Covid test results were handed in as little as 1 minute late. In essence, Defendant Saray was setting the Plaintiff up to fail.

84. When Defendant Saray demanded to know why the Plaintiff was refusing to sign, the Plaintiff responded, "Because life happens."

85. Nevertheless, after being threatened with immediate termination, Plaintiff reluctantly agreed and signed the new terms so that she could return to work.

86. Defendant Saray had backed Plaintiff into a corner, offering no clarification, accommodation or interactive discussion on what Plaintiff could do in the case of an emergency or other unforeseen circumstance.

87. On or about May 26, 2022, Defendant Saray called the Plaintiff inquiring whether Plaintiff was aware that Defendant's employee, Ms. Delia Brooks, had worked a whole week without being cleared to work.

88. Ms. Books was required to hand in negative Covid-19 test results in order to be cleared to begin her shift.

89. Plaintiff's shift was from Sunday to Thursday, so the Plaintiff was unaware of the status of Ms. Brooks current clearance.

90. Defendant IRI is a 24/7 service provider and the Plaintiff deduced that Ms. Brooks must have gotten clearance from Defendant's Supervisor Almonte the Friday or Saturday that the Plaintiff was off.

91. Defendant Saray informed the Plaintiff that she was notified by email not to allow

Ms. Brooks in the facility unless she submitted the required covid clearance.

92. Unfortunately, the Plaintiff had missed this email but when the Plaintiff double checked her emails, to Plaintiff's surprise both the Plaintiff and Plaintiff's Supervisor Almonte, were notified in the email correspondence.

93. Exempt employees such as the Plaintiff and Ms. Brooks are required to submit Covid test results twice a week in order to be allowed to work in the Defendant's facility. Exempt employees knew this perfectly well, as they had to submit this paper twice a week, just as the Plaintiff did.

94. Upon information and belief, Ms. Brooks knew that she was not allowed to work without proper clearance.

95. Ms. Brooks was not a new employee; in fact, Ms. Brooks had been working for Defendants for over a decade.

96. Furthermore, upon information and belief, clearance was always approved by Defendant Saray's secretary, Ms. Katherine Coleman.

97. The Plaintiff explained to Supervisor Almonte that they both received an email being instructed not to allow Ms. Brooks back to work unless she received prior clearance.

98. Upon checking his email, Supervisor Almonte admitted to having received the email but also admitted he initially missed it and forgot to read it.

99. When Plaintiff informed Almonte that she was now being reprimanded by Defendant Saray, Supervisor Almonte specifically responded, "Yeah, but I was on the same email as well!"

100.     Supervisor Almonte took it upon himself to contact Defendants' COO,

Dr. Corrigan to explain the minor oversight and to further explain that it was corrected as soon as it was brought to his attention and the Plaintiff's attention.

101.    Supervisor Almonte then called the Plaintiff and informed her that he spoke to Dr. Corrigan explained to her what happened and that moving forward a plan needed to be put in place, in order to avoid this situation from happening again. (The plan was to add the assistant manager to the email list so everyone would be on the same page when it came to clearance.)

102.    Ostensibly, the issue was resolved.

103.    On or about May 27, 2022, Assistant Manager Kisha Springer called the Plaintiff with a work-related question.

104.    Although it was a Friday and it was Plaintiff's day off, the Plaintiff picked up the phone and responded.

105.    While on the phone with Assistant Manager Springer, the Plaintiff overheard Ms. Brooks' voice in the background and immediately asked Assistant Manager Springer if Ms. Brooks was still at work, to which she replied, "yes."

106.    Plaintiff immediately instructed Assistant Manager Springer to have Ms. brooks leave the facility in accordance with Defendant Saray's orders, as the employee was not cleared by Defendant Saray to work.

107.    Furthermore, the Plaintiff reminded Assistant Manager Springer that the Plaintiff had **specifically** instructed her just one day before to prohibit Ms.

14

Brooke to return to work, unless clearance was approved by Defendant Saray.

108.     Plaintiff called Supervisor Almonte and informed him that Ms. Brooks was in the facility.

109.     Supervisor Almonte then called Dr. Corrigan and informed her about the situation.

110.     Later in the day, Supervisor Almonte called the Plaintiff again ordering Plaintiff needed to tell Assistant Manager Springer to immediately remove Ms. Brooks from the facility.

111.     The Plaintiff responded that she had already instructed the Assistant Manager to do so but made sure to follow-up again in accordance with Supervisor Almonte's orders.

112.     Shockingly, when the Plaintiff called Assistant Manager Springer to confirm that Ms. Brooks had left the building, Assistant Manager Springer responded that the employee had not left the building.

113.     When Plaintiff asked Assistant Manager Springer why Ms. Brooks was still in the building, the Plaintiff overheard Ms. Brooks say that she was cleared to return to work by an HR employee named Katherine.

114.     The Plaintiff insisted that Ms. Brooks had not been cleared and that Assistant Manager Springer immediately send Ms. Brooks home.

115.     Thanks to the Plaintiffs' specific directions, the Assistant Manager finally sent Ms. Brooks home.

116.     On or about June 1, 2022, Defendant Saray called the Plaintiff, and ordered her to report to the main office before 4.30 PM.

117.     Upon finishing her annual training, Plaintiff went to the main office where she was greeted by Defendant Saray.

118.     Defendant Saray informed the Plaintiff that she was being terminated for insubordination. Specifically, due to the Plaintiff allowing an uncleared employee to work in the facility.

119.     Plaintiff was shocked. Ostensibly, Plaintiff was being terminated because an insubordinate employee showed up to work on Friday May 27, 2022, on the Plaintiff's day off.

120.     The patently false "legitimate non-discriminatory" reason for Plaintiff's termination was merely pretextual as evidenced by the facts above.

121.     During the meeting, Defendant Saray stated that she did not intend to go through the records to explain herself any further, as she had already given the Plaintiff two examples of the Plaintiffs' insubordination (which were the same baseless accusations predicated on events that happened on the 26th and 27th of May).

122.     Upon information and belief, Ms. Delia Brooks who is Hispanic, knowingly went to work without the proper clearance and did not get terminated nor reprimanded.

123.     Upon information and belief, Mr. Steven Almonte who is also Hispanic

and was the supervisor charge on Friday May 27, 2022, did not get terminated and/or reprimanded.

124.     Upon information and belief, Plaintiff who was **the only person** terminated by Defendant Saray (also Hispanic) because of the incidents that transpired on or about the 26th and 27th of May 2022.

125.     Defendant Saray discriminated against the Plaintiff due to her race by disparately treating the Plaintiff compared to the Defendant's Hispanic employees.

126.     Defendants discriminated and retaliated against the Plaintiff on account of her religious Covid exemption.

127.     Defendants discriminated and retaliated against the Plaintiff based on her disability and failed to reasonably accommodate or hold any interactive discussion with the Plaintiff regarding the turning in of Covid tests, despite knowing Plaintiff had difficulty standing for lengthy periods of time on account of her hip surgery.

128.     Defendants subjected the Plaintiff to a hostile work environment, which caused the Plaintiff great sadness, stress and even resulted in a physical manifestation of anxiety in the form of flare-ups.

129.     Defendants unlawfully terminated the Plaintiff, by discriminating against her on the basis of race by treating her disparately since **both,** Ms. Delia Brooks and Residential Coordinator Steven Almonte were allowed to remain at work and were not disciplined for the same alleged circumstances that the Plaintiff was disciplined for which in part led to Plaintiff's unlawful termination.

130.     Defendants unlawfully terminated the Plaintiff because of Plaintiff's religious exemption and for requesting clarification and accommodation regarding Defendants' Covid policy.

131.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

132.     As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress.

133.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

134.     Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

135.     Plaintiff further suffers from panic attacks and often cannot sleep at night on account of Defendants' discriminatory and retaliatory conduct.

136.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

137.     The above allegations and facts are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected the Plaintiff.

### AS AND FOR A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

138. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

139. Title VII states in relevant part as follows:

    a.  Employer practices:

    b.  It shall be an unlawful employment practice for an employer:

          i.  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

140. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and religion.

141. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein on account of Plaintiff's race and religion.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

142. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

143. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

144. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION
UNDER STATE LAW
(Not Against Individual Defendants)**

145. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

      i."(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

146. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

147. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION FOR
DISCRIMINATION UNDER STATE LAW
(As Against Individual Defendants)**

148. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

149. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

    a. "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

150. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER STATE LAW
### (As Against All Defendants)

151. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

152. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

    a. For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden    under this article."

153. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff s opposition to the unlawful employment practices of Plaintiff s employer.

### AS A SIXTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE NEW YORK
### CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

154. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

155. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an

21

unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

156.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

157.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

158.     The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer… to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

159.     Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

22

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK
## CITY ADMINISTRATIVE CODE
## <u>(As Against Individual Defendants)</u>

160.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

161.     New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

162.     Defendants violated the section cited herein as set forth.

## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>(As Against Individual Defendants)</u>

163.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

164.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

165.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting,

23

inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Not Against Individual Defendants)**

166.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

167.     New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2)  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility;

or

(3)  the employer should have known of the employee's or agent's discriminatory

conduct and failed to exercise reasonable diligence to prevent such discriminatory

conduct.

168.    Defendants violated the section cited herein as set forth.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
## <u>(not against individual Defendants)</u>

169.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

170.    Plaintiff claims Defendants violated Title I of the Americans with

Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles

appear in volume 42 of the United States Code, beginning at section 12101.

171.    SEC. 12112. [Section 102] specifically states "(a) General Rule. - No

covered entity shall discriminate against a qualified individual with a disability

because of the disability of such individual in regard to job application procedures,

the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment."

172.    Defendants violated the above and Plaintiff suffered numerous damages as

a result.

## AS A NINTEENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT

25

**(not against individual Defendants)**

173.      Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

174.      SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

175.      Defendants violated the above and Plaintiff suffered numerous damages as a result.


**RELIEF DEMANDED**

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;


(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory

damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to all federal, state, city and all

other applicable laws; and

(e) such other and further relief as appears just and proper.


Dated: New York, NY
        November 9, 2023


                                    **L & D LAW P.C.**

                                    _____/s/_____
                                    Paul Liggieri, Esq.
                                    11 Broadway, Suite 615
                                    New York, NY 10004
                                    (212) 374-9786
                                    *Attorneys for Plaintiff*